(57 South. 900.)

No. 18,757.

KNIGHT v. BERWICK LUMBER CO.

McHUGH v. SAME.

(Jan. 15, 1912. Rehearing Denied March 11, 1912.)

*(Syllabus by the Court.)*

1. ADVERSE POSSESSION (§ 84*) — PRESCRIPTION OF TEN YEARS—GOOD FAITH.

Good faith, to support the prescription of 10 years acquirendi causa, is based on the honest and positive belief of the possessor, founded on just reasons, that he is purchasing from the real owner. Doubt as to the title of the vendor or as to his right to alienate is fatal to a claim of good faith. A doubt sufficient to induce the possessor to make an investigation of the title of his vendor is presumed to have continued down to the sale, in the absence of evidence tending to show its removal by adequate information derived from the records or other trustworthy sources.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 488–500; Dec. Dig. § 84.*]

2. REAL ACTIONS (§ 8*)—PETITORY ACTION— ISSUES.

In a petitory action, or action to establish title, issues cannot be raised as to the ownership of lands not sued for by the plaintiff.

[Ed. Note.—For other cases, see Real Actions, Cent. Dig. §§ 26–35; Dec. Dig. § 8.*]

Appeal from Nineteenth Judicial District Court, Parish of Iberia; James Simon, Judge.

Actions by George Knight against the Berwick Lumber Company, and by Michael W. McHugh against the same defendant. Actions consolidated. Judgment for defendant, and plaintiffs appeal. Reversed and rendered, and rights as to certain lands reserved, and suit of George Knight remanded for further proceedings.

Martin & Martin, for appellant George Knight. Weeks & Weeks, for appellant M. W. McHugh. Burke & Burke and Borah & Himel, for appellee.

LAND, J. George Knight instituted a partition suit against the Berwick Lumber Company, in which he alleged ownership of the undivided one-third or more of section 15, less the N. W. ¼ and the N. ½ of section 14, township 12 S., range 11 E., situated in the parish of Iberia, and that the Berwick Lumber Company owned the other two-thirds of said lands, less the N. W. ¼ of section 15. Defendant answered, denying title in the plaintiff, and asserting title in itself to all the property described in the petition, except the N. ½ of the N. W. ¼ of section 15. Defendant averred that it

acquired title from Wm. N. Bradley, by duly recorded act of sale, of date March 25, 1889; that Bradley acquired title from Frank A. Tompkins, sole heir of Sara M. Hartman, on February 20, 1889, by deed duly recorded; that in the said last sale there were some clerical errors in the description of some of the property; that the land in section 14 was described as being the N. E. ½ of section 14, the intent being to sell the N. ½ of section 14, and the notary described the N. E. ¼ of section 13, when the intent was to sell the N. E. ¼ of section 15; that these were mere clerical errors, the intent being, as expressed in the deed, to sell such lands as Frank A. Tompkins inherited from his grandmother, Sara M. Hartman, who never owned the N. E. ¼ of section 13, but did own the N. E. ¼ of section 15, and the N. ½ of section 14; that Mrs. Hartman acquired said lands from the widow and heirs of Richard Lynch in 1872 by deed duly recorded; that Lynch acquired the S. W. ¼ of N. W. ¼ of section 15 from Jno. Wilson Moseley, who acquired from the United States; and that Lynch acquired the other lands from the same source. Defendant for further answer pleaded the prescription of 10 years acquirendi causa.

Michael M. McHugh instituted suit against the Berwick Lumber Company and George Knight to establish his title to the N. E. ¼ of section 15, alleged to have been acquired from Frank H. Tompkins in May, 1909, by act of sale duly recorded in the parish of Iberia, and to have been inherited by said Tompkins from his grandmother, Mrs. Sara Hartman.

The Berwick Lumber Company for answer pleaded possession since 1889 of the particular land described in the petition, and denied plaintiff's right of action, under Act No. 38 of 1908, and prayed that the action be dismissed, or that plaintiff be forced to assume the position of plaintiff in a petitory action. In the alternative, the Berwick Lumber Company for answer set up, in substance, the same defenses urged in the suit of Knight. George Knight answered, alleging title to the undivided ⅚ or more of section 15 and the N. ½ of section 14, acquired by purchase from the widow and heirs of E. A. Pharr, who acquired from Lila Lynch, sole issue of the marriage between Richard Lynch and his second wife.

The two suits were consolidated, tried, and judgment was rendered in favor of the defendant decreeing it to be the owner of the N. ½ of section 14, and of the E. ½ and S. W. ¼ and S. ½ of N. W. ¼, section 15, township 12 S., range 11 E.

The judge a quo, in his written reasons for judgment, after reviewing the facts of the case, reached the conclusion that the defendant not only had the better title to the lands in controversy, but had acquired a perfect title to them by the prescription of 10 years.

We cannot find in the record any sale from Tompkins to Bradley as alleged by defendant, and as stated in the reasoning of the judge. We find in the transcript a paper purporting to be a copy of a power of attorney from Frank A. Tompkins to B. F. Winchester, authorizing the sale of certain lands to Wm. N. Bradley; but this document was ruled out on objection of the defendant, and comes up attached to one of plaintiff's bill of exceptions. We assume that the able counsel for the defendant elected to rely on defendant's plea of prescription, and did not overlook a procuration and deed forming essential links in the chain of title set up in the answer.

On March 25, 1889, Wm. N. Bradley by notarial act sold to the Berwick Lumber Company, Ltd., for the price of $1,350 in cash, the following described property:

"The *north half of section fourteen* (14), *the east half, also southwest quarter and south half of northwest quarter of section fifteen* (15).

All in township twelve (12) south, range eleven (11) east, containing in all nine hundred and eighty-six (986) acres of land. Also the east half of southeast quarter of section twenty-three, eighty-one (81) acres. The east half of northwest quarter of section thirty-five, 79.51 acres. Also the west half of northeast quarter and the east half of northwest quarter, 147.64 acres, all in township twelve (12) south, range ten (10) east."

The lands in dispute are underscored.

The power of attorney from Tompkins to Winchester authorized the sale to Bradley of 476.52 acres, "being the N. E. ½ section 14; N. E. ¼ section 13, township 12 S., range 11 E."; the S. E. ¼ of N. W. ¼ and S. W. ¼ section 15, township 12 S., range 11 E.; S. W. ¼ of N. W. ¼, same section; N. ½ of S. W. ¼ and S. E. ¼ of S. W. ¼, township 12 S., range 11 E. The certificate annexed to the copy of the procuration recites that the original was filed with a certain act of sale passed before Septime Lanaux, notary public, from Winchester, agent to Tompkins, to Wm. N. Bradley, of record in Conveyance Book No. 18, at folio 87 of the records of Iberia parish. The alleged misdescription in the act of sale was never corrected, so far as the record shows, and the Berwick Lumber Company took title from Bradley by a *new* description, substituting the N. E. ¼ of section 15, for the N. E. ¼ of section 13, and the N. ½ for the N. E. ½ of section 14.

Section 15 (except the N. ½ of N. W. ¼), and the N. ½ of section 14, were assessed to the estate of Richard Lynch on the assessment rolls of Iberia parish for the year 1888, and there were written across said assessment in the handwriting of the deputy tax collector the following words:

"This property has been transferred from Lynch to Mrs. Sara Hartman. See folio 123."

Mr. Brownell, the president of the Berwick Lumber Company, examined this assessment on the day the deed from Bradley to said company was executed, and the description of the lands conveyed was evidently taken from the assessment rolls. Mr. Brownell was educated for the bar in another state, and admits that he took the trouble to travel from Berwick, in St. Mary parish, to New Iberia, a distance of 45 miles, for the purpose of passing the deed from Bradley to the Berwick Lumber Company, but denies that he ever examined the deed from Tompkins to Bradley. Mr. Brownell gives no reasonable explanation for his failure to examine the records to see that Bradley had a recorded title to the lands conveyed to the Berwick Lumber Company. Mr. Brownell testified, in substance, that he took it for granted that Bradley had acquired title in some way through his aunt, Mrs. Hartman, and visited New Iberia for the purpose of ascertaining to whom the lands were assessed. We make the following extracts from the testimony of Mr. Brownell:

"A. He told me that they came to him through Mrs. Hartman. I believe he told me that was his aunt."

"A. He told me through Mrs. Hartman."

"A. Yes, sir; I asked him what was his title to the land."

"A. He said they came through Mrs. Hartman, and the sale was made at the time."

"Q. Why did you come up to New Iberia?

"A. Well, we came up here to pass the sale.

"Q. Why didn't you pass it in Berwick or Morgan City?

"A. I don't know any special reason anything more than I believe I came here to see in regard to the assessment.

"Q. Why did you wish to see the assessment?

"A. Well, the lands are usually assessed to the parties they belong to for any considerable time.

"Q. And you wanted to see the assessment roll to see whether the lands belonged to Bradley or not?

"A. I wanted to see the assessment roll in regard to the ownership of the lands.

"Q. Your statement was that you wanted to see assessment rolls to find whether the lands were assessed to Bradley as the ownership?

"A. Not necessarily to Bradley, but to see that the lands were assessed * * * already. He claimed he owned the land. I believe he had not owned the lands long enough to have them assessed."

Mr. Brownell admits that he found that the lands were assessed to Richard Lynch

for the year 1888, and was told by the tax collector that they would be assessed to Mrs. Hartman for the year 1889.

"A. I wanted general knowledge from the assessment rolls to verify the statements of Bradley; that is, I wanted a little corroborative evidence, not that I doubted his word if that was corroborated, but there was no question that he was all right, I thought.

"Q. Now, he told you he got the land from Mrs. Hartman, and you came to New Iberia to examine the assessments, and you found this land assessed to Richard Lynch?

"A. Yes, sir.

"Q. How did this verify his statement that he had bought it from Mrs. Hartman?

"A. It verifies it for this reason, in my mind, that upon the map which Bradley gave to me the particular lands in question were designated as Richard B. Lynch; in other words, Richard Lynch was written over them. Now, Bradley had told me that he had procured these lands through Mrs. Hartman, and Mr. Hartman from Lynch. I compared the map with the assessment and found them to compare, and being assessed by the assessor or his representative in the office, that these lands were assessed to Mr. Hartman for the year 1889, I came to the conclusion that all Bradley told me was true."

The witness testified that his statement that he did not look at the deed to Bradley, "foolish as it may seem," was true. The information obtained by Brownell from the assessment for 1888, and the prospective assessment for 1889, warned him that the Lynch title had passed to Mrs. Hartman, and that she was regarded as the owner of the property for the purposes of the assessment for 1889. It is hardly credible that Mr. Brownell, with his knowledge of the laws regulating the conveyance of real estate, was so "foolish" as not to examine the records before him to ascertain what title, if any, his vendor, Bradley, had to the lands assessed in the name of Richard Lynch, and about to be assessed to Mrs. Hartman for the year 1889. Mr. Brownell had sufficient doubt about the titles to make an investigation, and if he did not look for the title of Bradley on the records before him, he must be considered as willfully blind to the facts that an examination would have disclosed. In the answer

of the defendant it is averred that Bradley acquired his title on February 20, 1889, from Frank A. Tompkins, sole heir of Mrs. Sara M. Hartman, as shown by deed recorded in Book 18 of Conveyances, p. 87, and that defendant's deed, of date March 25, 1889, was recorded in the same book on page 188. We think that any reasonable man, under the circumstances, would have examined the deed to Bradley, to verify his very indefinite and loose declarations of title, and to compare the description of the lands in the deed with the description of the lands assessed to Richard Lynch. It is customary in conveyancing to take the description of real estate from the immediate vendor's title deed. The departure from this custom in the instant case seems to have been occasioned by the material difference between the description in the deed and the description in the assessment. This difference was necessarily known to Bradley, and the president of the Berwick Lumber Company surely had some reason for not inspecting the title deed to Bradley. The only reason that we can imagine is that he had notice from some source of the defects in Bradley's title.

[1] The prescription of 10 years acquirendi causa is based on good faith and just title. C. C. art. 3478.

"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which in fact belongs to another." C. C. art. 3451.

"By the term *just title*, in cases of prescription, we do not understand that which the possessor has derived from the true owner, for then no true prescription would be necessary, but a title which the possessor may have received from any person who he honestly believed to be the real owner, provided the title were such as to transfer the ownership of the property." C. C. art. 3484.

To be in good faith, the possessor must have the positive belief that he is the true owner of the property he holds. If he doubts

the validity of his title, his possession cannot be the basis of the prescription of 10 years. Gaines v. Hennen, 24 How. 553, 16 L. Ed. 770. Doubt as to ownership, or the right to alienate, is inconsistent with good faith, because doubt is the mean between good and bad faith. Good faith demands a firm and positive belief. Carpentier-Du Saint, Répertiore du Droit Français, vol. 31, p. 294, No. 1,534. While the president of the Berwick Lumber Company was not bound, as a matter of law, to inquire into the title of Bradley, he voluntarily undertook an investigation that disclosed to him the facts that the property was assessed to the estate of Richard Lynch and would be assessed to Mrs. Hartman, from or through whom Bradley said he had acquired his title. If the president of the lumber company had *honestly believed* that Bradley was the real owner of the property, it is fair to presume that he would not have undertaken such an investigation, and would not have sought "corroborative" evidence of Bradley's statements as to the title. We therefore conclude that the Berwick Lumber Company was a possessor in bad faith, and that its plea of prescription should have been overruled. As already stated, no deed from Tompkins to Bradley appears in the record before us, and therefore there is no evidence that Bradley, the vendor of the Berwick Lumber Company, ever acquired the legal title to the N. E. ¼ of section 15. The plaintiff, McHugh, purchased said property from Tompkins in the year 1909, and the Berwick Lumber Company cannot dispute the title of Tompkins, from whom it claims to have derived its title. Counsel for McHugh requests the court to pass on the title to all the lands claimed by the Berwick Lumber Company and George Knight in their respective answers. But we cannot in a petitory action, or in an action to establish title, give plaintiff judgment for land not sued for by him.

Such a judgment would be ultra petitum.

[2] Nor can a defendant in such an action assert title to lands not sued for by the plaintiff.

George Knight admits the co-ownership of the Berwick Lumber Company in the lands described in his petition for a partition. Knight claims to have acquired the interest of Lila Lynch, a daughter of Richard Lynch, the common author of the three litigants before the court. The reasons for judgment concede the claim of Lila Lynch to an interest in the property, but the judge was unable to fix the extent of such interest with any degree of certainty. Richard Lynch was married three times. The evidence does not establish the date of the first marriage, or the date of the death of the first wife, or the date of the second marriage, with the mother of Lila Lynch, who died in 1853. The third marriage was in 1855. Lila Lynch was born February 26, 1846, and Richard, her brother, in 1849. Richard died without issue and unmarried. John Lynch had five children, John, Lila, Richard, Minnie, and Hugh. John was of the first, Lila and Richard of the second, and Minnie and Hugh of the third, marriage. Minnie died without issue, and unmarried. It may be assumed that the second marriage took place not later than May, 1845, nine months preceding the birth of Lila Lynch. Now, what lands in dispute were acquired by Richard Lynch between May, 1845, and the year 1853, the date of the death of the second wife? In December, 1848, a United States patent issued to Richard Lynch for the N. ½ of section 14, and N. E. ¼ of section 15, in township 12 S., range 11 E. in the Opelousas district, containing 476.52 acres. In the same month and year another United States patent issued to Richard Lynch, for the S. E. ¼ of the same section 15, containing 160.18 acres. These lands belonged to the second community, and on the death of

the wife in 1853, her half interest passed to Lila and Richard, the children of the marriage. On the death of Richard, about 1870, his interest passed one-fourth to the surviving father and three-fourths to his sister. Lila thus became the owner of the undivided seven-sixteenths of said lands, and an undivided nine-sixteenths became the separate property of her father, Richard Lynch. On his death, Lila inherited one-third of said interest, or three-sixteenths of the whole, making her total interest, five-eights. In 1893 Lila Lynch sold to E. A. Pharr the N. ½ section 14, and section 15, except the N. W. ¼ of N. W. ¼ previously sold by her to said Pharr.

In July, 1909, Mrs. Amelia Pharr, universal legatee of E. A. Pharr, sold to George Knight all her undivided one-third right, title, and interest in and to the above-described tracts of land, including the N. W. ¼ of the N. W. ¼ of section 15, and all her rights against persons who may have removed timber from the premises. It is evident that Mrs. Pharr intended to sell all and singular her right, title and interest in the property.

Our conclusion is that the N. E. ¼ of section 15 belongs to McHugh and Knight in the proportions of three-eighths to the former and five-eighths to the latter, and that the titles of all parties to other lands should be reserved.

It is therefore ordered that the judgment below be reversed, and it is now ordered that the plea of prescription be overruled, and that the N. E. ¼ of section 15, township 12 S., range 11 E., in the parish of Iberia, be decreed to be the property of the plaintiffs, Michael W. McHugh and George Knight, in indivision, in the proportions of three-eights to the former and five-eighths to the latter; and it is further ordered that the defendant, the Berwick Lumber Company, Limited, pay costs in both courts. It is further ordered that the rights of the three litigants as to all other lands be reserved, and that the partition suit of George Knight be remanded for further proceedings according to law.