This is a petitory action wherein plaintiff, Mrs. Winifred M. South Dinwiddie, alleges herself to be the owner of: "Twenty (20) acres in a square in the Northeast corner of the East Half of the Northwest Quarter (E 1/2 of NW 1/4) of Section 18, Township 16 North, Range 13 West, Caddo Parish, Louisiana", and prays that her ownership be recognized and she be adjudged entitled to the undisturbed possession thereof. The following named persons are admitted to be in the actual physical possession of the property and are impleaded as defendants, to-wit: Mrs. Lula Mae Nance, Melvin F. Johnson, Lewell C. Butler, all residents of Caddo Parish, and J.J. Cox, whose residence is unknown. Curator ad hoc was appointed to represent him.
Plaintiff deraigns her title as follows:
Patent by the United States to the heirs of Lucinda Thomas, deceased, of date January 25, 1894, covering East One-Half of Northwest Quarter (E 1/2 of NW 1/4), Section 18, Township 16 North, Range 13 West;
Estate of Lucinda Thomas by tax collector to Roland Williamson for delinquent taxes of the year 1907, of date July 21, 1908, the tax deed conveying the following portion of the patented land, to-wit: "Twenty acres in a square in the North East corner of the East half of North West Quarter Section 18 Township 16 Range 13."
Roland Williamson to Celeste Fig Preserving and Industrial Company, Ltd., cash deed dated April 19, 1910, conveying the 20 acre tract;
Celeste Fig Preserving and Industrial Company, Ltd. to J.C. South, cash deed dated December 27, 1913, conveying same land;
John C. South dation en paiement to his wife, Mrs. Ida Mae South, dated January 28, 1915, conveying same land.
Mrs. South died intestate October 23, 1932 in Los Angeles, California, leaving as her sole heirs and legal representatives the plaintiff and a son, Donald Corbly South. He conveyed to plaintiff his interest in the 20 acre tract on February 17, 1940.
Defendants deny that plaintiff owns the land. They attack the validity of the tax sale to Roland Williamson on the ground that there was no legal assessment of the land and because no notice of delinquency was given by the tax collector. They admit that they are in the actual physical possession of the property in good faith and under titles translative of ownership, and deraign the chain of title under which they respectively hold. Briefly, the chain is as follows, to-wit:
Will Thomas, a son and heir of Lucinda Thomas, deceased, cash deed to R.L. Nance. This sale is dated February 3, 1913, and covers the entire tract patented to the heirs of Lucinda Thomas;
Tax deed in the name of R.L. Nance to L.C. Butler, dated July 14, 1919, for taxes of 1918, which covers an undivided 1/4 interest in the entire tract;
John Thomas, a grandson of Lucinda Thomas, to Melvin F. Johnson and D.C. Scarborough, cash deed dated June 9, 1923, which conveys all the right, title, and interest of the grantor in said tract being an undivided 3/8 interest;
Melvin F. Johnson and D.C. Scarborough to George D. McFall, cash deed dated June 9, 1924, which conveys an undivided 3/16 interest in the tract. It is stated in this deed that Scarborough sells all of his interest in the land;
R.L. Nance to J. Homer Jordan, sale of his right, title and interest in the tract, being an undivided 3/8 thereof;
J. Homer Jordan sale to Mrs. Lula M. Nance, wife of R.L. Nance, of his interest in the tract, being an undivided 3/8.
All defendants specially pleaded the prescription of ten and thirty years acquirendi causa, established by Articles 3478
and 3499 of the Civil Code.
L.C. Butler also pleaded the prescription of three years under Article 233 of the *Page 70 
Constitution of 1913 and the prescription of five years under Section 11 of Article X of the Constitution of 1921, against any attack on the tax sale made to him in 1919.
Judgment was first rendered rejecting plaintiff's demand as against Mrs. Nance and L.C. Butler but in her favor and against Melvin F. Johnson and J.J. Cox. Johnson and plaintiff filed separate motions for rehearing and Cox applied for new trial. All motions were granted. The case was reargued and resubmitted and thereafter there was judgment in favor of plaintiff and against Johnson who was held to be a purchaser in bad faith, recognizing her as owner of an undivided 3/16 interest in the 20 acre tract; and against plaintiff and in favor of the other defendants, Butler, Cox and Mrs. Nance, recognizing them to be owners to the extent of an undivided 13/16 interest in the 20 acre tract. Johnson was cast for all costs. He and the plaintiff perfected devolutive appeals.
Plaintiff apparently concedes that R.L. Nance, soon after his purchase from Will Thomas in the year 1913, took such possession of the tract described in the deed between them to serve as the basis for prescription of ten years acquirendi causa, but seriously contends that in purchasing and possessing Nance was in legal bad faith.
It is well here to interpolate that in the early part of the year 1923 one John Thomas instituted suit against R.L. Nance and L.C. Butler to recover an interest (presumably an undivided 1/2) in and to the East One-Half of the Northwest Quarter (E 1/2 of NW 1/4) of Section 18, Township 16 North, Range 13 West. John C. South was named a defendant but for inability to serve him, a non-suit, as to him, was taken. The entire record in that case was not introduced in evidence; only a copy of the judgment is in the record. Thomas was decreed to be owner to the extent of an undivided 3/8 interest in the tract; Butler an undivided 1/4 interest, and Nance an undivided 3/8 interest therein. The judgment bears date June 6, 1923.
It is shown that John Thomas, the plaintiff in said action, is the sole surviving son and heir of his father of the same name, who was one of the five children of Lucinda Thomas, deceased. Three of the children died prior to 1913 without issue. Therefore, when Nance purchased from Will Thomas, the entire tract, excepting the 20 acres in controversy, was in reality owned by Will Thomas and John Thomas, the latter being the representative of his father. At that time Will Thomas was a tenant of Nance above the City of Shreveport.
Mr. Nance testified that the first information he acquired concerning the land was from Will Thomas who claimed to own it; that Thomas asked him to go down with him and look the land over; that Thomas wanted to borrow some money from him and he refused to make the loan, whereupon Thomas asked him if he would buy the land. Some time thereafter they drove down to the land and looked it over. An old negro man named Jake Hudson, living near the tract, showed them the corners. Mr. Nance was not satisfied with Will Thomas' assertion of ownership and made inquiry from old man Hudson and other negroes of the community, concerning the heirs of Lucinda Thomas. He testified that Hudson and the others he interviewed on the subject stated that Will was the son of Lucinda and the "only living heir that she had at that time". He also discussed the heirship of Lucinda Thomas with the then sheriff of Caddo Parish and the sheriff stated that he knew Will was her son but did not know if there were other heirs. Nance testified that he paid in cash the price of $700 declared in the deed, which was a fair value for the land at the time. No one was then in possession of it.
Mr. Nance gave the following testimony:
"Q. Mr. Nance, you have stated, I believe, that you made inquiry with reference to Will Thomas' claim of ownership? A. Will Thomas?
"Q. Yes. Is that correct? A. Sir?
"Q. You did make inquiry prior to your purchase with reference to Will Thomas' claim of ownership, did you not? A. Yes.
"Q. The purpose of that inquiry was to determine whether or not he did own the property, was it not? A. Whether what?
"Q. Whether he did own the property or not. A. That is right.
"Q. That was the object in making these inquiries? A. Yes.
"Q. You were investigating his title or claim of ownership? A. Yes."
He admitted that he knew Lucinda Thomas had children besides Will, but also thought they were all dead. He further testified: *Page 71 
"Q. Mr. Nance, you just reached the conclusion that if the other children were dead Will Thomas was the owner of the property, is that correct? A. That is all I tried to find out; that there were no heirs still living.
"Q. If the others were dead you figured that Will Thomas owned the property? A. That is right.
"Q. And based on that belief and opinion you made your purchase from Will Thomas, is that correct? A. Yes.
"Q. You subsequently were sued by John Thomas who claimed an interest in that property, were you not? A. Yes, sir."
A fair deduction from the testimony of Mr. Nance is that he sought to ascertain if all the children of Lucinda Thomas, save Will, were dead, and upon learning they were, he assumed and concluded that Will was the sole heir and, as such, inherited all the property. In other words, that Will, as the surviving child, became the sole heir of his mother and exclusive owner of the land by virtue of that status. The possibility of any of the deceased children having left descendants did not occur to him. He was disillusioned when, some ten years later, John Thomas sued him for 1/2 interest in the land and was partially successful.
The conclusion reached by Mr. Nance as regards Will Thomas' ownership of the land was buttressed upon an error of law. When he learned that all the children save Will were dead, he was satisfied with the title offered him and felt secure and safe in making the purchase.
Under the title "Of the Prescription of Ten Years" appears Article 3479 of the Civil Code, which reads as follows:
"To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
"1. Good faith on the part of the possessor.
"2. A title which shall be legal, and sufficient to transfer the property.
"3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
"4. And finally an object which may be acquired by prescription."
The last three of these essential prerequisites are present in Mr. Nance's case, but the first one is absent. It is indispensable that all four coexist in order to form the basis of the prescription of ten years acquirendi causa.
Article 3451 of the Civil Code defines the good faith possessor to be: "* * * he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another."
Article 3452 defines the bad faith possessor. It reads: "The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective."
The third paragraph of Article 1846 of the Civil Code reads as follows: "Error of law can never be alleged as a means of acquiring, though it may be invoked as the means of preventing loss or of recovering what has been given or paid under such error. The error, under which a possessor may be as to the legality of his title, shall not give him a right to prescribe under it."
For over one hundred years the courts of this state when construing the Articles of the Civil Code relative to good faith possessors have accorded to this paragraph the influence it was designed to have. It has uniformly been held that regardless of the moral good faith of the purchaser, if he purchased and possessed under error of law, he thereby became a possessor in bad faith and prescription was not available to him. It is not sufficient always to characterize a possessor as being in good faith simply because he thinks or believes he is acquiring good title.
It is true, as contended, no one is required to examine the public records to determine the validity of title to real property he contemplates purchasing as a condition precedent to good faith. He may purchase without any investigation of the title and if the four named essentials exist, he is protected by the prescription of ten years. But if he is not satisfied with the title offered by the seller and institutes an investigation into its validity, from which facts and conditions are revealed which should put a reasonably prudent person on inquiry, it then devolves upon him to pursue every lead and ferret out all the facts to the end that he may not purchase *Page 72 
until he has complete information before him. If he does not do this, but purchases upon erroneous assumptions and conclusions, he does so at his own risk and peril.
Mr. Nance made a good beginning in his inquiry into the family history of Lucinda Thomas' heirs, but he quit too soon. He overlooked the fact that although the original heirs, save Will, were dead they might have left descendants who would stand, as regards the land, in the shoes of their father or mother.
In National Park Bank v. Concordia Land and Timber Company,159 La. 86, 100, 105 So. 234, 239, it is said: "`Notice of facts which ought to excite inquiry, and which, if pursued, would lead to knowledge of other facts operates as notice thereof.'"
This principle was adopted in Harrill et al. v. Pitts et al.,194 La. 123, 142, 193 So. 562, as being applicable to persons who contemplate the purchase of land and who fail to thoroughly investigate the title facts and history after acquiring knowledge thereof sufficient to put him on inquiry.
It was held by this court in Blunson v. Knighton et al., 140 So. 302, 307: "`One is not a possessor in good faith who has cause to inquire and fails to avail himself of the means and facilities at hand to inform himself of the true facts and yet acted at his peril.'"
This pronouncement is expressly affirmed by the Supreme Court in Harrill v. Pitts, supra.
Tyson et al. v. Spearman et al., 190 La. 871, 183 So. 201, was a petitory action. Concerning the notice herein discussed, the court, with emphasis and approval, quoted the rule laid down in 20 R.C.L., page 346, § 7, which is as follows: "Whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand; and if he omits to inquire, he is then chargeable with all the facts which, by a proper inquiry, he might have ascertained. This, in effect, means that notice of facts which would lead an ordinarily prudent man to make an examination which, if made, would disclose the existence of other facts is sufficient notice of such other facts."
In the eyes of the law, Nance, after learning that Lucinda Thomas had other children besides Will, for his own protection, at least, should have more thoroughly investigated the facts and family history, and failing to do so, he is held to have known that which such investigation would have revealed. It is said in Breaux-Renoudet Cypress-Lumber Company v. Shadel et al., 52 La.Ann. 2094, 28 So. 292: "He who is thus put on inquiry, and does not avail himself of the means and facilities at hand to inform himself of the true facts, can claim no greater consideration than can they who knew the true facts, and yet acted to their peril."
The facts of Laroux et al. v. Myers et al., 144 So. 117, decided by this court, are similar to those of the present case. As disclosed from the syllabus, it was therein held: "As regards ten years' prescription, collateral relative who, knowing deceased left neither ascendants nor descendants, purchased from widow deceased's property acquired before marriage held not good faith possessor (Rev.Civ. Code, art. 1846, subd. 3)."
Paragraph one of the syllabus in Knight v. Berwick Lumber Company, 130 La. 233, 57 So. 900, fits the facts of the present case and succinctly declares the law applicable thereto. We here quote it: "Good faith, to support the prescription of 10 years acquirendi causa, is based on the honest and positive belief of the possessor, founded on just reasons, that he is purchasing from the real owner. Doubt as to the title of the vendor or as to his right to alienate is fatal to a claim of good faith. A doubt sufficient to induce the possessor to make an investigation of the title of his vendor is presumed to have continued down to the sale, in the absence of evidence tending to show its removal by adequate information derived from the records or other trustworthy sources."
In that case the president of the defendant company investigated the title of the land in question and learned sufficient facts to put him on inquiry. He did not pursue the investigation to the extent necessary to learn the ultimate facts. Had he done so his company doubtless would not have purchased the land. The company was held to be a purchaser in bad faith.
The case of Roberson et al. v. Reed et al., 190 So. 153, decided by this court recently, is analogous. There the defendant purchased from one heir, believing him to be the sole heir of his father, whereas there were children of a pre-deceased child as in the present case. The purchaser honestly believed he was acquiring all of the *Page 73 
interest of the deceased father and grandfather. He had knowledge of the family history and was held to be in legal bad faith.
No effort was made to substantiate the attack upon the tax sale to Williamson.
The plea of prescription of thirty years is without merit because that period of time had not elapsed between Nance's purchase from Will Thomas and the filing of the present suit.
The tax sale to Butler in the name of Nance, insofar as it affects the 20 acres involved, was and is an absolute nullity. For the year 1918, for the taxes of which 1/4 interest of the entire tract was sold to Butler, the 20 acre tract was assessed to J.C. South and taxes thereon paid by him on February 21, 1919, several months prior to the tax sale. If Butler has had possession to any extent or in any manner, it has been for only the past two or three years.
Defendants argue that the description in plaintiff's deed and in the deeds of the chain back to Williamson, is void and ineffective for lack of definiteness. It is contended that the description: "20 acres in NE corner of E 1/2 of NW 1/4", etc., means nothing. We are unable to agree with this position. A square is a figure having four sides of equal length. A square containing 20 acres has a superficial measurement of 96,800 square yards. The square root of this area is 311.111 yards. This is the measurement of each side of the 20 acre tract. As the patented tract measures 440 yards or nearly so across its northern end, the boundaries of the 20 acre tract keep it well within the north forty of the whole tract. Any description of land, the location of which may be definitely fixed by calculation or survey on the ground is sufficient and meets legal requirements as to being reasonably certain. A surveyor would experience no difficulty in delineating the 20 acre tract when once on the ground and locating a government corner in the vicinity.
The description in the deed from Celeste Fig Preserving and Industrial Company, Ltd. unto J.C. South, reads: "A tract of land being 20 _____ in a square in the NE corner * * *."
It is argued that because the word "acres" was inadvertently omitted from the description it is vulnerable to the charge of indefiniteness. We do not think this contention has merit. Any person reading this description would experience no difficulty in determining the identity of the land intended to be sold. "A tract of land" was sold; that is certain. The tract is located in the Northeast corner of the East One-half of the Northwest Quarter (E 1/2 of NW 1/4), Section 18, Township 16 North, Range 13 West, and it contains 20 units of something. Real property is generally sold by acres. The vendor owned no lands in this tract save the 20 acres in the northeast corner thereof and in the conveyance by the vendee to his wife, the description is perfect, and the additional identifying clause appears therein, to-wit: "Being the same conveyed to this appearer by the Celeste Fig Preserving and Industrial Company, Ltd."
For the reasons herein assigned, the judgment appealed from is amended by decreeing and recognizing the plaintiff, Mrs. Winifred M. South Dinwiddie, to be the owner and entitled to the possession of the land involved herein and described as follows: "Twenty (20) acres in a square in the Northeast corner of the East Half of the Northwest Quarter (E 1.2 of NW 1/4) of Section 18, Township 16 North, Range 13 West, Caddo Parish, Louisiana."
Defendants are hereby cast for all costs.
DREW and HAMITER, JJ., concur.