126 So.2d 814 (1961)
Z. P. HOLLEY et al., Plaintiffs-Appellants,
v.
Mrs. Lula Lea LOCKETT et al., Defendants-Appellees.
No. 9390.
Court of Appeal of Louisiana, Second Circuit.
February 2, 1961.
*815 Gahagan & Gahagan, Natchitoches, for appellants.
Bethard & Bethard, Coushatta, for appellees.
Before HARDY, GLADNEY and BOLIN, JJ.
BOLIN, Judge.
This suit was originally instituted by the plaintiffs as an action in jactitation, or a slander of title suit. The defendants answered the petition, asserted title in themselves and thereby converted same into a petitory action.
Involved in the suit is a forty-acre tract of land in Red River Parish, Louisiana, and more particularly described as the Southeast Quarter of the Southwest Quarter of Section Four (4), Township 11 North, Range 9 West. The plaintiff, Z. P. Holley, is alleged to have acquired the land by purchase from Sallie Perrow Carey by deed dated April 24, 1943. On September 30, 1949, plaintiff, Z. P. Holley, conveyed an undivided interest in the property which he purchased from Sallie Perrow Carey to his two sons, Edward Anglin Holley and K. D. Holley, who thereby joined their father as plaintiffs in the original slander of title suit.
The suit was filed on January 30, 1959, against the widow and heirs of Keete Lockett upon the allegations that the said defendants were exercising certain acts of ownership over the property, and thereby slandering the plaintiffs' title. The answer of the defendants set up title in themselves as to an undivided one-half interest in the property. Title to this undivided interest was based on a sale made by the administrator of the succession of one Aaron Frederick by deed dated October 25, 1915, wherein Keete Lockett purchased an undivided one-half interest in the forty acres under consideration herein.
In excepting to the defendants' answer wherein they set up title in themselves, the plaintiff in the original action in jactitation filed a plea of prescription of ten and thirty years acquirendi causa.
During the trial of the case in the lower court it was stipulated that the defendants acquired a good paper title to an undivided one-half interest in the property by virtue of their deed in the year 1915, but it was contended that the plaintiffs had a superior *816 title which they had acquired by prescription by virtue of the deed in 1943, coupled with the required good faith and possession for a period in excess of ten years. The thirty-year prescriptive plea has been abandoned and is not before us for consideration.
The trial court overruled the plea of prescription of ten years and recognized the original defendants as the lawful owners of an undivided one-half interest in the forty acres of land. From this judgment the plaintiffs perfected an appeal to this court. The sole question presented is whether the trial court was correct in finding that the plaintiffs were in legal bad faith when the property was purchased by the plaintiff, Z. P. Holley, from Sallie Perrow Carey on April 24, 1943. It seems to be conceded by the parties that all other requisites for a prescriptive title under LSA-Civil Code, Articles 3478 and 3479 have been satisfied.
In order to decide whether there was legal good or bad faith exhibited in the transaction, we feel it is necessary to give a more detailed analysis of the various transfers affecting the property. The property in dispute herein, along with other property in Red River Parish, was originally purchased in 1877 by Aaron Frederick and Benjamin Perrow; said purchase being in indivision, but without any definite proportions being set forth. As it pertains to the title of the particular forty acres involved herein, the title thus remained in Aaron Frederick and Benjamin Perrow until their deaths. Aaron Frederick died some time prior to 1915, and his undivided interest in this forty-acre tract was transferred to Keete Lockett on October 25, 1915, by the administrator of his succession. The record then shows that this undivided one-half interest was shown in the succession of the said Keete Lockett when same was opened in Red River Parish; and that the inventory prepared in connection with the succession specifically describes the forty-acre tract involved herein. As previously stated, the title to this undivided one-half interest was vested in the heirs of Keete Lockett at the time of the trial below.
As to the title to the undivided interest which was originally vested in Benjamin Perrow by the original deed of acquisition in 1877, the record does not show the complete chain of title to same; it does, however, establish that Z. P. Holley purchased an undivided one-twelfth interest in the forty-acre tract from Henry W. Bethard, Jr., on June 1, 1929, and that Holley also purchased all of the "right, title and interest" in and to the same property from B. L. Thomas on June 8, 1928. On July 17, 1929, he originally purchased from "Sallie Perrow, a widow, whose deceased husband was Benjamin Perrow," all of her "right, title and interest" in and to the forty-acre tract. The record does not show where Mr. Bethard or Mr. Thomas acquired whatever interest they were purporting to sell to Z. P. Holley. However, the record does reflect that the succession of Benjamin Perrow was duly opened and Sallie Perrow was recognized as his sole and only heir, and thereby placed in possession of his undivided one-half interest in the property involved herein, by a judgment dated July 31, 1928. The only other instrument appearing in the record as it affects the title of the Holleys is the deed mentioned previously wherein Z. P. Holley purportedly purchased the property in full ownership from Sallie Perrow Carey, widow of Benjamin Perrow, by deed dated April 24, 1943. An examination of the briefs and the trial judge's written opinion shows that Z. P. Holley transferred to Sallie Perrow whatever interest he had acquired from her and from Bethard and Thomas by deed, but a copy of such transfer is not in the record, nor was there any evidence introduced during the trial upon which this court could predicate a conclusion as to when same was made. The district judge stated in one of his written opinions that "Mr. Holley had purchased a portion of the property from a local attorney in 1929 shortly before he sold to his vendee." In other words, it seems that he transferred *817 the property to Sallie Perrow soon after he had acquired whatever interest he had. The record does show that when he made a final purchase of the property in 1943, he consulted Mr. W. H. "Bubba" Walmsley. The only testimony about consulting the attorney was by Mr. Z. P. Holley himself. He said that he asked the lawyer to check his title for ten years. Based upon this cursory title examination, he purchased the property herein for a total consideration of $500.
Based upon these facts, the trial judge was of the opinion that the ten-year plea of prescription was not applicable because Mr. Holley was in legal bad faith when he purchased the property. This bad faith was predicated on the fact that since Mr. Holley had employed an attorney to examine his title, and such a title examination should have revealed the defect in the title, it thereby established legal bad faith of the purchaser. The trial judge correctly stated that the public record reflected that Sallie Perrow was recognized as owning only an undivided one-half interest in the property by a judgment when the succession of her husband was probated. The record also certainly revealed at that time that the remaining undivided one-half interest in the property had been listed in the inventory of the succession of Keete Lockett as belonging to his heirs.
The trial judge also stated in his written reasons for judgment that this previous purchase by Holley of an undivided interest in this property prior to the date he originally sold same to Sallie Perrow should have been sufficient to make him suspicious that there was a flaw in the title to the whole property.
LSA-C.C. Article 3479 provides as follows:
"To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
"1. Good faith on the part of the possessor.
"2. A title which shall be legal, and sufficient to transfer the property.
"3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
"4. And finally an object which may be acquired by prescription."
The last three of these essential prerequisites are admittedly present in this case, but the first one is in dispute. It is necessary that all four of these elements coexist in order to form the basis of the prescription of ten years acquirendi causa.
LSA-C.C. 3451 defines a possessor in good faith as follows:
"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another."
Article 3452 defines the bad faith possessor thusly:
"The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective."
Article 3481 provides that good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it.
For over one hundred years the courts of this state, when construing the articles of the Civil Code relative to good faith possessors, have accorded to this paragraph the influence it was designed to have. It has uniformly been held that regardless of the moral good faith of the purchaser, if he purchased under an error of law, he *818 was thereby in legal bad faith, and prescription was not available to him. It is not sufficient always to characterize a possessor as being in good faith simply because he thinks or believes he is acquiring good title. Dinwiddie v. Cox et al., La.App. 2 Cir., 1942, 9 So.2d 68 certiorari refused; La Fleur et al. v. Fontenot, La.App. 1 Cir., 1957, 93 So.2d 285; Martin v. Schwing Lumber & Shingle Co., Inc., 1955, 228 La. 175, 81 So.2d 852.
When purchasing property no one is required to examine the public records to determine the validity of its title as a condition precedent to good faith. He may purchase without any investigation of the title and if the four main essentials of Article 3479 exist he is protected by the prescription of ten years. But if he is not satisfied with the title offered by the seller, and institutes an investigation into its validity, from which facts and conditions are revealed which would put a reasonable and prudent person on inquiry, it then devolves upon him to pursue every lead and ferret out all of the facts to the end he may not purchase until he has complete information before him. If he does not do this, but purchases upon erroneous assumptions and conclusions, he does so at his own risk and peril, La Fleur v. Fontenot, supra; Dinwiddie v. Cox, supra.
As to what effect a title examination has on the question of good faith under the prescriptive article, we quote from Martin v. Schwing Lumber & Shingle Co., supra [228 La. 175, 81 So.2d 854]:
"While it is true that the existence of a title recorded in the name of a person other than the vendor does not of itself deprive the vendee of the presumption in his favor created by Article 3481 of the Code and he may purchase without any investigation of the title yet be protected by the prescription of ten years if the four essentials exist, however if, instead of relying on the faith of his vendor's title, he institutes an investigation into its validity, he is then bound by what the record reveals and cannot claim to be in good faith if the record discloses a defect in the title of his vendor. Knight v. Berwick Lumber Co., 130 La. 233, 57 So. 900 * * *"
On the question of title examination as it affects the good faith on the part of a purchaser, the Supreme Court decided in the case of Nethery v. Louisiana Central Lumber Co., 1932, 175 La. 753, 144 So. 486, that the mere employing of an attorney to search the records and render an opinion on the title would not thereby brand the purchaser as being in bad faith, per se. In the cited case, the purchaser bought the property from Susan A. Nethery in whose name the attorney had approved the title. It developed that the husband of the vendor had died and that his heirs had inherited his community interest therein. As the record did not disclose this defect, and the purchaser was otherwise in good faith, the court held the evidence sufficient to show good faith. See also Savoia v. Capello, La. App. 1 Cir., 1960, 119 So.2d 113.
In the case of Bel v. Manuel, 1958, 234 La. 135, 99 So.2d 58, the Supreme Court held that where a purchaser already owned an undivided interest he could not be in legal good faith in believing that he was acquiring a good title because he could not believe that he was acquiring a good title to the entire interest. In other words, under those circumstances, the mere fact that he was purchasing an undivided interest should have put him on guard that there was some defect in the title and his purchase under these circumstances would place him in legal bad faith.
With the preceding codal article and jurisprudence in mind, we now proceed to a discussion as to how they affect the facts of this case. As previously stated, the record does not show several transactions involving this property, which we feel should be examined in order to properly decide the good or bad faith of the Holleys. For example, *819 we are unable to decide what effect the purchase by Mr. Z. P. Holley of the undivided interest from Mr. Bethard and Mr. Thomas had on his good faith unless we have before us all of the transactions in relation thereto.
As previously stated, the only evidence about a title examination was that the attorney was instructed to check the public records for a period of ten years. It, therefore, seems very important to us that the record show a complete chain of title as it affects the property involved herein from the time that a valid paper title was acquired by Keete Lockett in 1915 until the alleged acquisition of same by Holley in 1943. We feel that such evidence should be before the court in order that the good faith of the purchaser can be determined as it relates to the previous purchase of the undivided interest and the title examination.
It is also noted that there is testimony in the record by Mr. Z. P. Holley that he had always been under the impression that Benjamin Perrow and Aaron Frederick owned a specific tract of land rather than in indivision and that the portion involved herein came from that part owned by Perrow. While we are not adopting such testimony at this time, we do point it out to show that all transactions covering this portion of the property should be made a part of the record in order that the question of good faith can be more accurately studied and determined.
The evidence relating to the title examination left much to be desired. We realize that the attorney making same is dead, and perhaps the testimony is as complete as possible under the circumstances. If there is any other legal evidence available touching upon the circumstances and extent of this examination, the record should so reflect.
We are, therefore, of the opinion that justice and equity require that this case be remanded to the district court with specific instruction to reopen same for the purpose of receiving additional testimony covering all property transactions as it relates to the property herein from the year 1915, (or prior thereto, if, in the opinion of the trial court, it is relevant to the issues herein) until the purchase of the property by Z. P. Holley in 1943; that the opportunity be allowed for the offering of other legal evidence relative to the title examination; that after the case is reopened for such purpose, and such additional evidence is received, the district court render a judgment therein consistent with law and the opinion expressed herein, with the right of appeal being specifically reserved. It is so ordered and accordingly the judgment appealed is reversed and set aside and the case remanded. The costs of this appeal to be paid by the defendants-appellees, all other costs to await the final determination hereof.
Reversed and remanded.