GLADNEY, Judge.
After the death of Stokes Seals, Lillie Mae Seals and Dorothy Mae Seals, the *631 widow and adopted daughter of the deceased, caused his will to be probated and further petitioned the court for an order directing the collateral presumptive heirs of the deceased to show cause why petitioners should not be placed in possession as owners of a sixty acre tract of land situated in Claiborne Parish, Louisiana. In due course service of process was had upon defendants in the rule, who joined issue by answer wherein they alleged themselves to be the true owners of eight-ninths of the property by reason of inheritance from Henry Seals, a brother of Stokes Seals, and that the latter owned only an undivided one-ninth interest in the subject property. Trial of the case resulted in considerable documentary evidence being produced, and the testimony of more than a score of witnesses. The trial court rendered judgment in favor of Lillie Mae Seals and Dorothy Mae Seals, recognizing their claims to ownership and making the rule absolute. The defendants in rule have appealed.
The principal issues raised upon submission of the case to the court were three pleas of prescription filed on behalf of Lillie Mae Seals and Dorothy Mae Seals, wherein they invoked the ten year acquisitive prescription authorized by LSA-C.C. art. 3478, the thirty year acquisitive prescription under LSA-C.C. art. 3499, and the thirty year liberative prescription as provided by LSA-C.C. art. 1030.
The testimony adduced in the case was not taken down in writing and realizing that such testimony was essential to protect the rights of the parties, the judge a quo made extensive notes during the trial .and included the substance of this memo-randa in his written reasons for judgment. The opinion contains substantially a complete summation of the testimony and is adequate for the purpose of resolving the several issues presented on this appeal. Counsel representing the appellees stated in .an opposition to a motion for a new trial filed ir. the trial court, that: “ * * * in the written opinion filed by the court, the court took occasion to go into detail in an exhaustive finding of facts, which it is respectfully submitted, is an accurate and true summary of the testimony and documents presented at the trial.”
In this court, however, appellees have filed a motion to dismiss the appeal predicated on articles 601, 602, and 603 of the Code of Practice of 1870, and articles 2130 and 2131 of the Louisiana Code of Civil Procedure. Reference to both the Code of Practice and the Louisiana Code of Civil Procedure was prompted by the fact that trial of the case occurred prior to the effective date of the Code of Civil Procedure and the transcript of appeal was lodged after the latter became effective. We perceive no difference in the application of the articles of the Code of Practice from those of the Code of Civil Procedure. The object of the rule was then and is now to require dismissal of the appeal if the record of appeal is incomplete by reason of the failure of the parties to secure an agreement upon a narrative of facts or to require the trial judge to make up such a statement in all cases where testimony of the witnesses has not been taken down in writing. The rule of construction is, however, that where written reasons of the judge a quo reveal substantially all of the material testimony and the record is sufficiently complete to permit full consideration of the issues presented on appeal, the motion to dismiss will be denied. Holloway v. Willis, La.App., 134 So.2d 79 (2d Cir.1961); Rosen v. Shingleur, La.App., 47 So.2d 141 (1st Cir.1950); Pelican Signs Inc. v. D’Aquin, La.App., 107 So.2d 722 (Orl.1958). We regard the recitation of the testimony found in the written opinion of the judge a quo as adequate for a determination of the legal issues involved on this appeal, and we, therefore, deny the motion to dismiss the appeal.
The circumstances from which this litigation has evolved, chronologically stated, begin with the acquisition of a one-hundred *632 acre tract of land by Henry Seals on January 12, 1904, at which time he was single. Henry Seals was later married to Leola Davis on February 5, 1907. Between the dates of January 6th and April 22nd, 1913, Henry Seals died intestate without children, but was survived by his mother and a number of brothers and sisters. By deed dated April 22, 1913, Stokes Seals acquired all the right, title and interest of every character whatsoever of the vendor, Leola Seals, surviving widow of Henry Seals, in and to the - one-hundred acre tract of land for a consideration of One Hundred Ten ($110.00) Dollars, which sum was secured by the purchaser’s vendor’s lien mortgage note. Subsequent to purchasing this property on November 27, 1916, and November 13, 1917, Stokes Seals paid off this $110.00 mortgage note and another $220.00 mortgage note which had been given by Henry Seals and identified with an act of mortgage granted in favor of Tap Taylor.
Following his acquisition of the property, Stokes Seals immediately moved upon the property and exercised certain acts of possession, ownership and management which included farming and the sale of timber. Also, during the years 1922, 1931, 1932, and 1935, he executed mineral leases upon the property. During the trial considerable testimony, pro and con, was given by witnesses not related to the parties involved in the suit as to whether or not Stokes Seals exercised exclusive ownership of the land. The evidence seems to indicate that none of the appellants objected to the control of the property as undertaken by Stokes Seals until after 1956, in which year he sold forty acres of the one-hundred acres formerly owned by Henry Seals, to Max Maritzky and others. During his occupancy and possession of the property, Stokes Seals apparently assumed the obligation of his family’s welfare and took care of his mother until her death in 1929, as well as other needy relatives. There is no evidence the mother made any claim upon the property. Loretter Freeman, Rebecca Wafer White, Garver Amos and John Loy Seals lived upon the property for many years. They testified they always considered the property as “heir property” through inheritance from their deceased brother, Henry Seals.
During January and February, 1948, Stokes Seals transferred the property to A. D. Watts and the latter reconveyed the same to Stokes Seals. Watts testified that the transfer was occasioned solely by reason of an advance of money to pay taxes. Consequently, the transaction was simply an act of pledge (LSA-C.C. art. 3135) and has no effect upon the questions presented. . The sale of forty acres of the property in 1956 was not actively opposed by the heirs and no efforts have been made to impede or attack the sale. Several witnesses testified, however, that the sale engendered some dissatisfaction.
The foregoing facts disclose that the one-hundred acre tract of land of which Henry Seals died possessed in 1913, was separate and not community property, and the sale by Leola Seals to Stokes Seals conveyed no title whatsoever. The property through inheritance was transmitted to the heirs of Henry Seals. Unquestionably, the Seals family relationship was well known to Stokes Seals in 1913. Stokes Seals lived on the property from 1913 until 1956 with the only invasion or disturbance of his possession arising from possession by Loretter Freeman, Garver Amos, John Loy Seals and Rebecca Wafer White, who also lived on the property over a number of years. True, there is testimony that some of these parties paid rent and lived on the property by reason of consent and sufferance from Stokes Seals, but we find it more logical to accept the testimony of those parties that they regarded the property as “heir property” and accordingly, were acting within their rights by living thereon. The record discloses that neither the succession of Henry Seals nor that of any of the other heirs was ever formally opened, but there is substantial evidence that those heirs who did live upon the property must be consid *633 ered as having tacitly accepted the succession of Henry Seals.
In holding that Stokes Seals had acquired title to said property through the ten year acquisitive prescription of LSA-C.C. art. 3478, the trial court found the conditions of that article had been met, and these included: good faith on the part of Stokes Seals; a title translative of the property; possession during the requisite period of time; and an object susceptible to acquisition by prescription. Appellants seriously question whether Stokes Seals was in good faith when he purchased the property. It is immaterial whether he was in moral good faith if it should be disclosed that he was in legal bad faith. Stokes Seals must be charged with knowledge of the family relationship which excluded Leola Seals from acquiring the property by inheritance from her husband, Henry Seals. Viewed in the most favorable light, it can be said Stokes’ purchase was due to an error of law, but even if he acted in moral good faith, his knowledge of the family relationship made his purchase one in legal bad faith. Laroux et al. v. Myers et al., La.App., 144 So. 117 (2d Cir. 1932); Ruth v. Buwe et al., 185 La. 204, 168 So. 776 (1936); Roberson et al. v. Reed et al., La.App., 190 So. 153 (2d Cir.1939) ; Dinwiddie v. Cox et al., La. App., 9 So.2d 68 (2d Cir.1942); La Fleur et al. v. Fontenot et al., La.App., 93 So.2d 285 (1st Cir. 1957) ; Holley et al. v. Lockett et al., La.App., 126 So.2d 814 (2d Cir. 1961) ; LSA-C.C. art. 1846(3); 34 Tulane Law Review, 670. The plea of ten years acquisitive prescription based on LSA-C.C. art. 3478 is, therefore, overruled.
Petitioners, in support of their plea of prescription of thirty years acquirendi causa, assert that Stokes Seals remained in continuous and uninterrupted possession, publicly and unequivocally, under title of owner of the property in question from 1913 until 1946, or for more than thirty years, and accordingly, has fully met the requirements of articles 3499 and 3500 of the Civil Code. By reason of the fact that Stokes Seals held under a deed which described the property, his possession extended to the entire tract without the necessity that all of the property be enclosed. See: LSA-C.C. art. 3503. It is clear that for more than forty years Stokes Seals lived on the property, caused it to be assessed to him, paid taxes, leased it on several occasions, farmed and cut timber thereon, and collected rents therefrom. His possession was only interrupted by the four above mentioned heirs who moved upon the property and lived there without objection by Stokes Seals.
The rule is, as stated in Lee v. Jones et al., 224 La. 231, 69 So.2d 26 (1953), that the possession of a coheir, holding property in indivisión with his brothers and sisters, is to be viewed as precarious, not as owner of the whole, but as inuring to the benefit of his co-owners, and in order for one coheir to prescribe against the other, his possession must be clearly hostile to the rights of the others. Ethredge et al. v. Watts et al., 137 La. 686, 69 So. 95 (1915); Liles et al., v. Pitts, et al., 145 La. 650, 82 So. 735 (1919); Gill v. Robinson, 11 Orleans App. 226; and Arnold et al. v. Sun Oil Company et al., 218 La. 50, 48 So.2d 369 (1949).
The possession as exercised by Stokes Seals fails to disclose hostility to the rights of occupancy or use of the property by the other coheirs, but, in fact, we think the contrary is shown by his indulgence in permitting some of the heirs to live upon the property without objection. We hold, therefore, that the plea of thirty years acquisitive prescription, as provided for by art. 3499 of the Civil Code, has not been made out and should be overruled.
Appellees’ final plea of thirty year libera-tive prescription rests upon article 1030, LSA-C.C., which declares :
“The faculty of accepting or renouncing a succession becomes barred by the lapse of time required for the *634 longest prescription of the rights to im-movables.”
It was held in Sun Oil Company v. Tarver, 219 La. 103, 52 So.2d 437 (1951), that Civil Code article 1030 should be interpreted literally and that it bars the right of the heir to accept or renounce a succession after thirty years of inaction, whether he be a legal or instituted heir, but that the prescriptive plea is available only to the succession or its representative, or a coheir, who has timely accepted the succession. Accordingly, under this authority, the plea is available to the petitioners in this instance.
The facts as determined by the trial court disclose that only Loretter Freeman, John Loy Seals, Rebecca Wafer White, and Garver Amos, together with Stokes Seals performed acts evidencing an intention to tacitly accept the succession of Henry Seals in the quality of heirs, consistent with the provisions of LSA-C.C. art. 987 et seq. See also: Foster v. Spann, 170 La. 1019, 129 So. 622 (1930); Scott v. Briscoe, 36 La.Ann. 278 (1884); Loubiere v. LeBlanc, 12 La. Ann. 210 (1857). We fail to find evidence or proof of tacit acceptance by the mother. True, she was dependent upon her son, Stokes Seals, and lived with him upon the subject property, but the record is otherwise barren of circumstances indicative of her intention to assume possession of any share of the property owned by her deceased son, Henry Seals. The remaining heirs were wholly unconcerned with the estate of Henry Seals until 1956, and these, including Olie Seals, Lay Seals, Ella Thompson and the heirs of Dellie Mardis Brown, deceased, have lost their rights through the operation of LSA-C.C. art. 1030. The same ruling applies to the mother of Henry Seals. The plea of liberative prescription based on the Codal article is overruled as to the heirs of John Loy Seals, Rebecca Wafer White and Garver Amos. Likewise, the prescriptive plea must be overruled as to Loretter Freeman.
The record discloses certain quitclaim deeds which must be considered valid and effective, and which were executed during June, 1957 by Loretter Freeman, Ella Thompson and Dellie Mardis Brown, now deceased. These deeds are binding upon the vendors named therein, and upon their heirs.
The effect of the foregoing ruling is to divide the estate of Henry Seals into five (5) equal parts among those who are held to have tacitly accepted the succession. The part of Loretter Freeman was transferred by quitclaim deed to Stokes Seals.
Our findings as hereinabove set forth, require that the judgment under review be affirmed in part, reversed in part and amended, and for purposes of clarity we recast the same to read as follows:
IT IS ORDERED, ADJUDGED AND DECREED:
That petitioners’ pleas of ten and thirty years acquisitive prescription be and the same are hereby overruled:
That petitioners’ plea of thirty years lib-erative prescription be sustained as to the defendants Olie Seals, Lay Seals, Ella Thompson, and the heirs of Dellie Mardis Brown, and overruled as to Loretter Freeman, the heirs of John Loy Seals, deceased, the heirs of Rebecca Wafer White, deceased, and the heirs of Garver Amos, deceased.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the following described property:
“Ei/2 of SE14 of SEj4 of Section 20, and SW^4 of SWj4 of Section 21, Township 21 North, Range 6 West, containing 60 acres, more or less, with all and singular the improvements thereon, located in Claiborne Parish, Louisiana,”
be and the same is hereby declared to be owned in the following proportions: Lillie *635 Mae Seals One-Fifth (1/5) ; Dorothy Mae Seals, One-Fifth (y¡) ; the heirs of John Loy Seals, One-Fifth which interest is to be held in equal portions by 1) Willie T. Seals, 2) Ernestine Liston, 3) Ellwease Love, 4) Fannie Neal, 5) Samuel Seals, 6) Timothy Seals, and 7) Annie Cleo Johnson; Rebecca Wafer White, deceased, One-Fifth 0/6), which interest is to be held in equal portions by 1) Fred Wafer, 2) Lenard Wafer, 3) Acie Wafer, and 4) Eula Duncan ; and Garver Amos, deceased, One-Fifth (i/6) which interest is to be held in equal portions by the following: 1) Henry L. Amos, and 2) Arzella Ward.
All costs are taxed against the appellees.