On February 21, 1917, Hillard Clayton M. Hines, Jr., acquired from Fred F. Arceneaux et al., by deed recorded in Conveyance Book 78, page 387, the Southeast Quarter (SE 1/4) of the Southeast Quarter *Page 614 
(SE 1/4) of Section Six (6), Township Two North (2 N.), Range Two East (2 E.) in Rapides Parish. On July 11, 1922, Hines conveyed the same land by deed recorded in Conveyance Book 113, page 144, to Robert A. Corley. On July 16, 1936, Corley conveyed the same land and another forty acre tract adjoining it, by deed recorded in Conveyance Book 209, page 117, to James Warren Hull, and on June 9, 1941, by deed recorded in Conveyance Book 255, page 394, Hull reconveyed the land back to Corley.
On July 18, 1941, by deed recorded in Conveyance Book 255, page 590, Corley conveyed the tract above described to Fairl Ivy, and on the same day by deed recorded in Conveyance Book 255, page 591, Ivy conveyed five acres out of the forty acre tract to Clemmie Yvonne Labat, a minor child of Earl and Susie Labat. On October 16, 1945, Ivy, by deed recorded in Conveyance Book 301, page 533, conveyed twelve acres out of said tract to Tazoni Berlin.
All of the above deeds are by reference incorporated into the allegations of the petition of plaintiffs.
Plaintiffs are six of the children born of the marriage of their father, Hillard Clayton M. Hines, Jr., and his wife, Ola Hurley Hines. They allege that they, together with the minors, Hillian Hines, Earlwyn Hines and Yvonne Hines (surviving children of Earl Hines, their deceased brother), are the owners of an undivided one-half interest in the above described land. The three minors just named, Fairl Ivy, the minor, Clemmie Yvonne Labat and Tazoni Berlin are made defendants, and declaring that plaintiffs no longer desire to own the property in indivision, they pray to be recognized as the owners of an undivided 1/14th interest each in the property; that the three minor children of Earl Hines, deceased, be recognized as the owners of an undivided 1/42nd interest each, and that the other defendants be recognized as the owners of the other undivided one-half interest.
They allege that the property is not susceptible of being divided in kind, and that it should be ordered sold to effect a partition by licitation.
In support of their claim of ownership, they allege that at the time their father acquired said property, he was married to and living with his wife, Ola Hurley Hines, and that said property belonged to the community existing between them; that their mother, Ola Hurley Hines, died on July 15, 1920, leaving surviving her, the plaintiffs and Earl Hines, who has since died, and that plaintiffs, together with the three minor children of Earl Hines, are the owners of the undivided one-half interest in said property of their deceased mother.
Plaintiffs' demand was first met with an exception of no cause and no right of action, which was overruled, and is not urged here.
The tutor ad hoc for the minor children of Earl Hines filed as his answer, a general denial. The other defendants appeared by counsel and reserving their rights under the exception of no cause and no right of action, answered the demand of plaintiffs by a plea of prescription of ten years, acquirendi causa, in which they set forth that they and their authors in title have been in quiet, peaceful and undisturbed actual physical possession of the property for a period long exceeding ten years; that this possession has been continuous and uninterrupted, and that if plaintiffs ever had any right or claim to the property it has been lost by such prescription.
The answer denies the substantial allegations of the petition, and in the alternative, and only in the event the prescription pleaded should be overruled, they set forth that defendants Labat and Berlin have in good faith improved the property at a cost to Labat of $800 and to Berlin of $250, and that in the event plaintiffs are successful, these defendants are entitled to reimbursement for these improvements, or to remain in possession of said land until they are paid. Defendant Ivy recognizes his liability as warrantor to his vendees, and they call Robert A. Corley in warranty.
Corley appeared and for answer to plaintiffs' demand, denied generally the substantial allegations of the petition and alleged that he acquired the property under a just title, in good faith and without any knowledge *Page 615 
that he was not acquiring the entire interest in said land, and that immediately following his acquisition of the property he took possession of same in its entirety, and that he continued such possession undisturbed, and that he and his successors in title have had continuous, undisturbed, open possession of same for more than twenty-three years prior to the filing of this suit; and he specially pleads the prescription of ten years.
For want of knowledge, he denies the allegations of the defendants Labat and Berlin as to the sums expended for improvements.
After trial in the lower court there was judgment sustaining the plea of prescription and dismissing plaintiffs' suit at their cost. They have appealed from that judgment.
The only question in this case is whether or not Corley was in good faith. If he acted in good faith, as the lower court found he did, then the plea of prescription was properly sustained.
"Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it." Art. 3481, R.C.C.
"It is sufficient if the possession has commenced in good faith; and if the possession should afterwards be held in bad faith, that shall not prevent the prescription." Art. 3482, R.C.C.
It is not now disputed that Ola Hurley Hines, the mother of plaintiffs, died July 15, 1920, almost two years before the land involved in this suit was acquired by Corley. It necessarily follows that he acquired only one-half interest in the property by virtue of the deed from Hines. If he knew of the infirmity of the title he was accepting before and at the time of his acquisition, prescription has not accrued, and the plea of prescription should be overruled.
[1] After defendants and warrantor had offered testimony showing possession of the property, in support of the plea of prescription, and after counsel for plaintiff had, by cross examination of Corley, tried to get him to admit that he knew at the time he purchased the land that Mrs. Ola Hines was dead, plaintiffs in rebuttal offered the testimony of one of the plaintiffs, Hardy Hines, to the effect that he was present at the home of his father and heard his father tell Corley before the execution 'of the deed, that his wife was dead and that he could convey only a one-half interest in the land. Plaintiffs also offered to prove the same thing by Hillard Clayton M. Hines, Jr., but this testimony was excluded on objection that the witness could not impeach the declarations of the act of sale he had executed and which had been offered in evidence by plaintiffs. Counsel for plaintiffs complains of this ruling, but we think the complaint is groundless in the absence of any allegation of fraud or error. Objection to Hardy Hines testifying to the same thing was overruled, and he was allowed to testify.
S.E. Williford, husband of one of the plaintiffs, was also allowed to testify that after the suit was filed Corley told him that he knew all along, and before he bought the land that the title was not good, and that Hines told him that if anything came up about it he would reimburse him.
Corley admits that he learned after he moved back to Ruby in 1923, that Mrs. Hines was dead. He knew from then on that his title was not good, but he had already taken possession in good faith.
The district judge, according to his reasons for judgment, was of the opinion that in order for plaintiffs to offer evidence of bad faith on the part of Corley, they should have pleaded his bad faith and should have offered the evidence in chief, and that having failed to do so, such evidence should not be allowed in rebuttal, though he did allow Hardy Hines and S.E. Williford to testify, and though he did discuss this testimony in his reasons for judgment. We believe that the evidence is admissible. Plaintiffs are not required to anticipate that a defendant will plead prescription, and undertake in their petition to negative it. Even after prescription had been pleaded in this case plaintiffs could not know that defendants would offer proof in support of the plea, least of all the character of proof that would be offered, and as replication is not allowed, plaintiffs had the right to rebut *Page 616 
testimony offered to prove the allegations of the answer on any new issue raised.
The land in question is in the vicinity of a community named "Ruby." The record discloses that Corley, with other members of his family, moved into the community about 1898, and that he lived there until 1907, when he moved to North Louisiana, where he lived until about 1923, when he again moved back to Ruby. He had two sisters and one brother living there during the time he was away, and he visited them, usually once a year, usually during the summer, when he was not engaged in his work of teaching. He knew Hines, his vendor, and his wife, Ola Hurley Hines. He conducted his negotiations for the purchase of the land by letters, but went back to close the trade.
After this long lapse of time his recollection of the details of the transaction is not so good, but he has no recollection that Hines informed him of the death of his wife. The deed itself recites that Hines' wife is living and living with him. Counsel for plaintiffs says in brief that this is an indication that he knew the wife was dead, and this statement in the deed was an effort to emphasize the idea that she was living at the time. We have examined the other deeds offered in evidence, and in all of them in which vendor or vendee is married, is the same statement. In view of this, we take it that this is the customary way to set forth the marital status of parties to deeds in Rapides Parish. Notaries in different sections of the state use different wording to set forth the marital status of parties. We attach no importance to this.
It is also contended that because Corley was well acquainted with the Hines family, and because he often visited his relatives in the community where they lived, that he must, of necessity, have known of the death of Mrs. Hines. This would be only presumption, and possibly corroborative of other evidence going to show that he knew she was dead, and the only positive evidence tendered to the effect that he was informed of her death before execution of the deed, is that of one of the plaintiffs, Hardy Hines, and of S.E. Williford as to what Corley told him.
Counsel for plaintiffs complains that because the district judge was of the opinion that this testimony was not admissible, he did not consider it in arriving at the conclusion that Corley was in good faith. We believe he took this testimony into consideration because in discussing it, he says:
"But even if this may be done, and if the testimony of the defendants (meaning the plaintiffs), be given full credence, as if based upon proper allegations and brought out in chief, they still have not, we think, discharged the burden of proof."
We are not in accord with the statement that if this testimony be given full credence, plaintiffs would not be entitled to judgment, because if it is true that Corley knew at the time of his purchase that there was an outstanding one-half interest in the property to which he was not acquiring title, he could not be a purchaser in good faith, and prescription would not have begun to run in his favor at that time.
We take it rather that the district judge did not believe this testimony, and the record as a whole justifies him in not believing it.
It is not contended that Corley did not pay the full value of the land at the time he acquired it. In fact, he bought the forty acre tract adjoining it on the same day for $50 less than he paid Hines, and the other forty acres had some kind of house on it, whereas the Hines tract had no house, but was, at that time, under fence.
These plaintiffs, or some of them, at least, lived near the land all the time, and knew that Corley had a deed to it and was claiming it as owner. They stood by all these years without making any claim to an interest in the land until this suit was filed, some twenty-three years after Corley acquired it.
[2] We are of the opinion that the district judge correctly held that Corley was a purchaser in good faith, and therefore entitled to the benefit of the prescription pleaded.
Counsel for defendants contends that plaintiffs having offered in evidence the deed from Hines to Corley without restriction, are bound by the recitals of the instrument, *Page 617 
and cannot be allowed to impeach it. This may be true, but having found that Corley was in good faith, it is unnecessary to consider this contention.
Plaintiffs and defendants have filed well written and interesting briefs, citing numerous decisions of our appellate courts. However, under the facts found we do not deem it necessary to cite any other authority than the articles of the Civil Code cited supra, and Article 3478, R.C.C., as amended by Act No. 161 of 1920 and Act No. 64 of 1924, and to call attention to the many cases cited under these articles in Dart's Revised Civil Code.
For these reasons, the judgment appealed from is affirmed at the cost of plaintiffs in both courts.