For the reasons assigned, the judgment appealed from is affirmed.

O'NIELL, C. J., absent.

37 So.2d 441

## HAAS et al. v. DEZAUCHE et al.
### No. 38576.

July 2, 1948.

Application for Rehearing Withdrawn
Oct. 4, 1948.

Edward Dubuisson, of Opelousas, for defendants-appellants.

Frederick E. Greer, of Shreveport, and W. C. Perrault and Leon S. Haas, Jr., both of Opelousas, and J. S. Atkinson, of Shreveport, for plaintiffs-appellees.

PONDER, Justice.

The plaintiffs brought jactitation proceedings against the defendants alleging that the defendants were slandering their title to the NE¼ of the SW¼ of Section 20, T 6, R 7E, located in St. Landry Parish by asserting rights in this property under recorded mineral deeds and mineral leases. The proceedings were opposed by the defendants on the ground that the plaintiffs did not have the necessary possession to maintain the suit and in the alternative the defendants set up their title to the property. The plaintiffs interposed a plea of ten years acquisitive prescription under title translative of property. On trial of the case, the lower court gave judgment in

favor of the plaintiffs and the defendants have appealed.

■ We have arrived at the conclusion, after a careful consideration of the evidence, that the plaintiffs and their authors have been in possession of the property continuosly for more than ten years under a translative title. The reason for our conclusion will be fully set out in this opinion. In view of this conclusion, the superiority of the title is of no moment. If the defendants' title was of earlier origin, it could not prevail over the plaintiffs' and their authors' possession of the property for a period of more than ten years under a title translative of property.

The land involved in this suit is a portion of land acquired from the United States under Act of Congress, March 2, 1849, c. 87, 9 Stat. 352. The defendants' ancestors in title, Abner Smith and Robert R. Chapman, were issued patents to this property by the State of Louisiana on June 26, 1896. The defendants, the Smith and the Chapman heirs, executed deeds conveying mineral interest in the property and mineral leases to the defendant Dezauche, all of which were duly recorded. The plaintiffs claim that these instruments are casting a cloud on their title.

The plaintiffs trace their title to a deed executed on January 27, 1900, wherein the State of Louisiana, through the Auditor and the Register of the State Land Office, transferred a tract of land containing 18,335.84 acres, including the forty acres in dispute herein, to the Board of Levee Commissioners of the Red River, Atchafalaya and Bayou Boeuf Levee District. After various transfers this large tract of land eventually became the property of J. E. Dunlap. Dunlap transferred the land in its entirety to Leonce M. Soniat on April 9, 1915. Soniat entered into a timber contract on February 5, 1917 with Soniat and Deblieux, Inc. giving the corporation the right to remove the merchantable timber from the entire tract of land in consideration of the payment of a stipulated sum per thousand feet of the timber removed and the payment of the taxes during the life of the contract. During that same year the corporation entered into a contract with E. S. Moorman & Son authorizing the cutting of ash timber on a stumpage basis on the portion of the tract of land lying south of the Colorado Southern Railroad, which ran through the land. The corporation also entered into a contract with A. A. Waterhouse Lumber Company, Inc., in the same year authorizing the cutting and removing on a stumpage basis all the hardwood timber from 17,000 acres of this land, except the ash timber lying south of the railroad. Timber operations under these contracts began in 1917 and continued through 1920. In removing the timber a number of ox teams were used when the water conditions permitted. This large tract of land is subject to periodical overflow and is traversed by a number of watercourses. Gas boats and a steam boat were

used to tow the timber through these watercourses. From sixty to one hundred and fifty men were used in removing the timber. During the operations, which covered a period of three years, timber was removed from practically all portions of the land, except the forty acres in dispute. The operations were generally known and not interfered with. Most of the outer limits of the entire tract were blazed when these operations started. The operations were very extensive in 1919 and the corporation built a tramroad from Krotz Springs to a point near Mary King Lake, located in the center of the southern portion of the land and near the forty acres in dispute. The timber was loaded with a steam loader on flatcars at that point and hauled by locomotives to the railroad at Krotz Springs. Many float roads and log roads were opened during these operations. Between the years 1920 and 1924, the corporation conducted timber operations on this tract of land and a spur was built some four miles long in the northeast portion of the lands lying north of the railroad. Timber operations were carried on by the Deblieux Lumber Company, the successor of the corporation, until 1927, at which time most of the merchantable timber had been removed. Thereafter, a cooperage company cut all of the timber suitable for the manufacture of staves from the entire tract of land, except the forty acres in dispute. All of the timber operations were carried on under the original timber contracts by various successors.

These stave operations continued until some time in 1929. Timber was removed from various portions of these lands under contracts with the plaintiffs from 1929 to 1941.

The plaintiffs and their predecessors in title have paid taxes on the property since it was first acquired from the levee board. The plaintiffs have executed various mineral leases, including the lease to their present lessee, the Gulf Refining Company, and assignments since the year 1926. A number of timber contracts executed by the plaintiffs and their predecessors have been recorded since 1917 in the records of St. Landry Parish. Geophysical operations were conducted on the lands from 1936 to 1944. The forty acres in dispute was explored for oil in 1938. There has been drilling and completion of oil wells on portions of the land. Surveys have been made and roads have been built in connection therewith. It appears that a road had been recently built across the forty acres in dispute.

The evidence shows that this large tract is swampland and subject to annual inundation. The evidence further shows that the land is valuable only for its timber and minerals.

■ It is no longer open to dispute that the cutting and removing timber from open swampland is a sufficient character of possession to support the prescription of ten years if the operations are general in character and carried on for a considerable

length of time when accompanied by public signs showing an intention to possess the land, such as building roads and other works and the payment of the taxes. We recently reviewed and approved the jurisprudence to this effect in the case of Veltin v. Haas, 207 La. 650, 21 So.2d 862. The evidence in the present case conclusively shows that the plaintiffs and their predecessors have exercised dominion over the entire tract of land since 1917 to the date that this suit was filed in the only manner that the nature of the land would permit. This dominion has been open and notorious by the many acts performed on the land and the many contracts placed of record, together with the payment of the taxes.

■ The defendants contend that where several contiguous tracts of land are conveyed in the same deed that the rule, of possession of part of an estate is sufficient, does not apply as provided in Article 3437, Revised Civil Code, which reads as follows:

"It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries."

In support of their contention they cite Section 208, d, page 911, 1 Am.Jur., Adverse Possession; 2 C.J.S., Adverse Possession, § 187 d, page 786. The authorities cited are not pertinent because we are governed by the rules set out in our Civil Code dealing with prescription. We have pointed out in many decisions, handed down by this Court construing Article 3437 of the Civil Code, that the possession of a part of a tract of land described in a deed is possession by virtue of the deed and it extends to the limits of the area described in the deed. It was pointed out recently in two decisions handed down by this Court, after reviewing the jurisprudence of this State and especially the case of Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, that the provisions in Article 3437 of the Civil Code to the effect that it is sufficient for a person intending to take possession of an estate to enter upon and occupy part of the land, provided that he intends to possess all that is included in the boundaries, that the word "boundaries" means an inclosure or physical boundaries if the possession be without a deed, but if the possession be by virtue of a deed the possession extends to the limits stated in the deed. See Snelling v. Adair, 196 La. 624, 199 So. 782; Long v. Chailan, 196 La. 380, 199 So. 222, and the authorities cited therein. The entire tract of land forms but one estate and even if portions of it separately describe in the same deed it in reality forms but one tract. It was treated as such by all of Soniat's predecessors in title and at the time possession of it was taken by Soniat. The possession is coextensive with the title or deed and extends to the limits described in the deed.

The defendants are under the impression that our holding in the case of Nixon v. English, 207 La. 906, 22 So.2d 266, is contrary to the jurisprudence and is to the effect that the cutting of timber on lands where there were no marked boundaries was insufficient possession to support the plea of prescription. Our decision in that case is to the effect that the occasional cutting of trees on an isolated tract of land unaccompanied by any public signs is not sufficient to support the plea. In mentioning the various public signs indicating possession, we mentioned boundary lines as one indicating the possessors control and dominion over the property. We did not mean to convey the idea that the marking of boundaries was sacramental. It is only one of the means of indicating dominion over the property.

The defendants contend that the rule, that the possession of part of a tract of land conveyed by a deed will extend to the whole tract, is not applicable under the facts in this case. They take the position that the rule is based on a reasonable inference that the possession of a part is an intention to possess the whole and that the evidence affirmatively shows that the plaintiffs never intended to take possession of the forty acres in dispute. They state in their brief that the plaintiffs have carefully and scrupulously avoided taking possession of the land in dispute and instructed their employees not to enter it for timber operations because they and the plaintiffs' authors did not believe they owned it or had doubts about the ownership.

The land in controversy lies adjacent to an acreage which appears to be owned by one Whitman. The superintendent of Soniat Deblieux Lumber Company, who was removing timber by contract, testified that in the year 1928 a Mr. Schultz, who was looking after the Whitman property, interrupted their operations near the land in controversy because there was a dispute as to the property lines. He stated that it was a policy of his company, on account of the small amount of timber on the lands, to stay far enough away so as not to encroach on the property of another. A witness, who had been an employee of the A. A. Waterhouse Lumber Company, testified that there was some confusion concerning the eighty acres of land lying south of the Whitman property, which includes the land in dispute, and that he was instructed by the superintendent not to cut the timber on that land because there was some doubt as to its ownership. He stated that this occurred in the year of 1922. A witness, who worked for the timber contractors, stated that two persons, employees of the timber contractors, informed him that they did not know who owned the land. A witness testified to the effect that they, meaning himself and the timber contractors, didn't know who owned the land and didn't think anyone did. He stated that the foreman of one of the timber contractors gave him instructions not to cut the timber on

the land in dispute because the company didn't own it. All of these statements were made by employees of Soniat and Deblieux, Inc. and subsequent timber contractors who did not own the land. There is nothing in the record to show that the plaintiffs or their predecessors ever disclaimed ownership to the land in dispute.

■■ The statements of the employees of the corporation and the timber contractors cannot be imputed to Soniat and we cannot assume that they were made under his direction. The timber operations began in 1917 and the first statement that was made 'by any of these employees indicated a doubt as to the ownership of the land was made in 1922 after the timber operations had been carried on for more than five years. Good faith is always presumed in matters of prescription and the person alleging bad faith must prove it, Article 3481, Revised Civil Code. Possession by virtue of a title leads to the supposition that the possession commenced in good faith, Article 3487, Revised Civil Code. The possession having commenced in good faith the intention of retaining the possession is presumed unless there appears a decidedly contrary intention, Article 3443, Revised Civil Code. Moreover, if there was a subsequent bad faith it would not prevent the prescription, Article 3482, Revised Civil Code.

■■ There is no proof in the record that Soniat commenced his possession in bad faith and we must presume that his possession, under his title, commenced in good faith. In the absence of any evidence showing a decidedly contrary intention on the part of Soniat and his successors in title, it must be presumed that they intended to retain the possession of the entire tract of land, including the forty acres in dispute. Moreover, the retention of Soniat's possession is not inconsistent with the timber contractors refraining from cutting and removing the timber by reason of Schultz's protest and an intention not to cut the timber until the question of the title was settled would not prevent Soniat or his successors in title from retaining the possession that Soniat had previously acquired. Screen v. Trainor, 172 La. 51, 133 So. 359.

For the reasons assigned, the judgment is affirmed at appellants' cost.

O'NIELL, C. J., absent.

MOISE, J., takes no part.