On the Merits
Before TATE, FRUGÉ and MILLER, JJ.
MILLER, Judge.
Fred T. Malone, allegedly the owner of a small interest in a rural 15 acre tract of land located about 10 miles from Alexandria, sought to partition the property by licitation. Defendants were Andrew J. Fowler and some absent and unknown heirs listed as co-owners of the land.
The only issue before us concerns defendant Fowler’s good faith under his plea of prescription, contending for ownership by ten years acquisitive prescription under LSA-C.C. Articles 3478 et seq.
The trial court handed down a well reasoned written opinion holding that Fowler’s acquisition was not in good faith, and overruled his plea of prescription. Fowler has appealed, contending that the trial court was manifestly erroneous in making this factual determination.
Ten-year acquisitive prescription of im-movables in Louisiana is regulated by Civil Code Articles 3478-3482. These articles require that the adverse possessor be in good faith at the time he makes the purchase. As defined by Article 3451, the good faith possessor is he “who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact.” Conversely, as defined by Article 3452, the possessor in bad faith is he “who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that *503 his title is vicious and defective.” Article 3481 provides that “good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it.”
In many situations a purchaser is under a duty to determine the facts relative to his vendor’s title. Doubt on the part of a purchaser concerning the vendor’s title has been held to be inconsistent with good faith. Knight v. Berwick Lumber Co., 130 La. 233, 57 So. 900 (1912); Dinwiddie v. Cox, 9 So.2d 68 (La.App.2nd Cir. 1942).
If a purchaser is aware of any fact which should raise doubt about his vendor’s title, he will be held under a duty to resolve that doubt — "to pursue every lead and ferret out all the facts to the end that he may not purchase until he has complete information before him.” Boyet v. Perryman, 240 La. 339, 352, 123 So.2d 79, 83 (1960); Dinwiddie v. Cox, supra. See also Harrill v. Pitts, 194 La. 123, 142, 193 So. 562, 568 (1940); Blunson v. Knighton, 140 So. 302, 307 (La.App.2nd Cir. 1932).
Since any suit based on ten-year acquisitive prescription necessarily arises long after the purchase in question was made, the practical issue in appraising good faith is whether the purchaser should have doubted his vendor’s title from the facts he then knew. The possibility of a title defect suggested by the purchaser’s deed, the records if they were searched, or the purchaser’s private knowledge may raise a sufficient doubt to require a thorough investigation of all matters relating to the title both within and without the records. Juneau v. Laborde, 219 La. 921, 54 So.2d 325 (1951) ; Dinwiddie v. Cox, supra. In Juneau, a purchaser, well informed of the family history of his vendor’s immediate predecessor in title, knew that the predecessor’s wife had died and that there were children of the marriage. The purchaser was held to be in bad faith since he was bound by the legal conclusion that these children might have had an interest in the property. In Dinwiddie, a purchaser was held to be in bad faith because he knew his vendor, who was selling inherited property, was not an only child. Though the purchaser knew that his vendor had no living brother or sister, he was held to the legal conclusion that there might be issue of the deceased heirs who would inherit in their parent’s stead. 9 So.2d 68, 72. Rather than permitting the purchaser to accept his vendor’s assertion of full ownership, the court, as in Juneau, required a thorough investigation. See the Comment “Good Faith for Purposes of Acquisitive Prescription in Louisiana and France,” 28 Louisiana Law Review 662.
For the price of $100, Fowler acquired the property in dispute with the following description:
“ ‘All of their rights, title, and interest in and to a certain tract, piece or parcel of land, together with all ways, means and privileges thereunto appertaining, lying, being and situated in the Parish of Ra-pides, State of Louisiana, and containing the quantity of fifteen (15) acres, more or less. Said tract of land is situated East of the Public Road leading from LeCompte to Lamourie and is bounded on the North by land formerly belonging to H. H. Hardy, commonly known as the William Wright Place, now the property of Mrs. Ernestine Drewett, on the South by the N. L. Stewart place, formerly property of W. A. Wiggins and now the property of Deal, on the West by the Public Road, and on the East or in the rear by property formerly belonging to Oran Dorsett, now the property of Edgar Fowler. The property herein conveyed is the same property that was sold by Miss Emily Carnal and others, to Sallie Jones, which sale is recorded in book 72 on page 403 of the Conveyance Records of Rapides, Parish, State of Louisiana.’ ”
The deed was executed July 30, 1955 by Frances Tutt Howard and on August 8, 1955 by Evelina Fields West, both as vendors, and on April 27, 1956 by A. J. Fowler, as vendee. In August of 1955, *504 Fowler paid the consideration and fenced the property and has maintained undisputed possession of the property from that time until this suit was filed in June of 1967.
Although on three separate occasions Fowler specifically denied that he prepared the description used in this deed (Tr. 88, 191, 196), Exhibit Engolio 1 establishes as a fact that Fowler did prepare the description
The above quoted description refers to a deed “ * * * to Sallie Jones, which sale is recorded in book 72 on page 403 of the Conveyance Records of Rapides Parish, * * * ” and is in evidence as P-1. That deed shows that the property was purchased by Mrs. Jones on September 16, 1916 for the price of $250. There was no succession proceedings or deed to show how title passed from Sallie Jones to Fowler’s vendors, Frances Tutt Howard and Evelina Fields West.
Fowler testified that he was contacted by mail by these owners. They allegedly offered the land to him for $100, but he did not keep these letters. Fowler then contacted the attorney for Mrs. Howard. On June 12, 1955, Fowler sent the above quoted description along with these instructions :
“ * * * You send the deed to the woman in California (Mrs. Howard) after the one’s there have signed it and when it comes back to you, send it on to me and deposit the draft there in your bank. When I see the deed is executed properly, as I am sure it will be if some notary over there doesn’t do something wrong, then I will order the draft paid and you can distribute the money.”
On the same day, June 12, 1955, Fowler again wrote the attorney stating in part:
“ * * * I have notified Evelina West that I must have- a letter from them stating they are the owners of this 15 acres in “fee simple” as I do not desire to buy an interest in this property. She states that she and her neice Mrs. Howard, are the only owners. I have no reason to doubt this, since I do not know these people and cannot obtain a family history, and you say you cannot obtain one. I have asked her to put this in writing to me, and if I do not receive this information from her, I will not honor the draft.”
On or about August 10, 1955, Fowler received a letter purportedly written by “Ev-alina”, (Exhibit Fowler 3) stating:
“New Orleans, La.
Aug. 8, 1955
“New Orleans, La.
“Dear Mr. Fowler
“I am sending you back the deed you sent me It is all signed like you said.
“Francis signed it the 30th of July and I signed it today.
“You asked about other owners, there are none. We are the only ones who have anything in that place.
“Francis is my sisters only child. We wrote you about selling the place because it is so far and the ones we had looking after it never sent us no money though I hear they rented the place
Sincerely
Evalina”
Fowler testified that the deed was forwarded to him with this letter and he attached the letter and envelope to the deed. But a letter from Mrs. Howard’s attorney dated August 25, 1955 states that the attorney had the deed in his possession and would forward it to Fowler after Fowler sent the $100.
The handwriting and signature of “Ev-alina” on the letter does not in any way resemble the signature of Evelina Fields West on the deed. Appellant explains this by the fact that Evalina was then more than 80 years old and had friends to write letters *505 for her. This is all the more reason why Fowler should have obtained an affidavit.
The trial court was impressed by the fact that prior to 1955, Fowler had completed two years of law school, having dropped out during his senior year. This establishes that Fowler was well informed on the Civil Code Articles here at issue and the requirement for good faith at the time of purchase. When Fowler was testifying, he stated that he knew “as much about successions and land matters as most attorneys” and can “check titles to the nth degree, and draw deeds”. Tr. 195. He stated however that he did not have that much knowledge in 1955.
We find ample support for the trial court’s factual determination that Fowler did not have “good faith” at the time of acquisition.
First, Fowler prepared a “quitclaim” type description commonly used to convey a vendor’s undivided interest in property. Therefore, Fowler’s vendors did not warrant to him that they owned the entire interest in the property. Adding importance to this basis for the trial court’s decision is the fact that Fowler (three times) denied that he prepared the description. But it was established that he did.
Second, 15 acres of land located ten miles from a major city, fronting a major highway with ten acres of pasture land suitable for farming cotton, corn, hay, etc., which was worth $250 in 1916, must have been worth substantially more than $100 in the year 1955. In 1954, five acres planted to cotton yielded seven bales of cotton. The fact that these alleged owners of the entire “fee simple” were willing to sell “all their right, title and interest” for this small amount should cause Fowler to question their ownership of the entire tract. Fowler lived all of his life within 2yi miles of the tract, and his brother owned an adjacent tract.
Third, it was not established to the trial court’s satisfaction, nor ours, that the letter signed “Evalina” (Exhibit Fowler-3) was sufficient to give Fowler the “good faith” belief that he was acquiring the full interest in the 15 acres. The difference in signatures on the letter and on the deed (which according to Fowler arrived in the same mail) should have alerted him to some title problem. An affidavit of heirship should have revealed that these parties owned only a Jio interest in the property. The fact that Fowler bought property that he knew was last titled to Sallie Jones from parties who did not have Jones in their name, should have alerted him to the need for succession proceedings or at least an affidavit of heirship. Again, the fact that Fowler required the letter shows that he was aware of some title problem.
It is on the basis of these factual findings that we distinguish the cases relied on by defendant appellant. Haas v. Dezauche, 214 La. 259, 37 So.2d 441 (1948), and Hadwin v. Sledge, 116 So.2d 114 (La.App.2nd Cir. 1959). In those cases, there was no evidence in the record indicating bad faith on the part of the purchaser, whereas in the instant case, we find such evidence.
Appellant relies on the case of Jackson v. Norred, 55 So.2d 282 (La.App.2nd Cir. 1951), which sustained a plea of 10 years prescription when the opponent failed to overcome the presumption of good faith established in LSA-C.C. 3481. There, the property was conveyed with “full guarantee of title”, for an adequate consideration. Here the consideration was obviously small, and the property conveyed was “All their rights title and interest * * * ” Additionally, the trial court in Jackson found “good faith” acquisition of the purchaser, whereas here, the trial court did not.
Hines v. Berlin, 28 So.2d 613 (La.App. 2nd Cir. 1946) is also relied on by appellant. Again, the trial court found that the purchaser began his possession in good faith. The fact that he later learned that his title was questionable did not affect the running of his 10 years acquisitive prescription. LSA-C.C. 3481, 3482. This was a *506 factual determination and the Court of Appeal affirmed the trial court’s finding. In Hines, the court noted that “It is not contended that Corley did not pay the full value of the land at the time he acquired it.” 28 So.2d 613 at 616. Here, the consideration was obviously inadequate.
The trial court’s findings of fact are supported by the evidence. The law was correctly applied, and the trial court’s judgment is affirmed. All costs of this appeal are to be paid by defendant-appellant, Andrew J. Fowler.
Affirmed.